# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                   No. CR 12-1572 JB

ROGER DALE FRAZIER,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Report, filed January 7, 2013 (Doc. 41)("Objections"). The Court held a sentencing hearing on January 18, 2012. The primary issues are: (i) whether the United States Probation Office ("USPO") in the Presentence Investigation Report, disclosed December 31, 2012 ("PSR"), correctly found that the offense level from the offense guideline for Aggravated Assault is applicable pursuant to U.S.S.G. § 2H1.1(a)(1), because Defendant Roger Dale Frazier acted with intent to cause the victim, Donovan Tanner, bodily harm with his flashlight, in the incident for which he is convicted; and (ii) whether the Court should accept the parties' stipulation in the Plea Agreement, filed October 24, 2012 (Doc. 38), under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and vary downward from a guidelines range of 37 to 46 months, to a sentence of three to five years probation. For reasons stated on the record at the hearing, and for further reasons stated herein, the Court will overrule Frazier's objections to the USPO's calculated offense level, but will accept the Plea Agreement and vary downward to a sentence of three-years probation. Frazier, a San Juan County, New Mexico, Deputy Sheriff, acting under of state law, hit Donovan Tanner with his county-issued flashlight at least five times in the head,

which is using a dangerous weapon with intent to cause bodily harm under the Tenth Circuit's construction of the Sentencing Guidelines § 2A2.2 for aggravated assault.   Nevertheless, the circumstances of the offense and Frazier's circumstances counsel the Court to accept the parties' Plea Agreement, to vary downward from a guidelines sentence, and to impose three years of probation with a $10,300.11 fine, which is the cost of Frazier's supervised release.

## FACTUAL BACKGROUND

On March 17, 2011, Saint Patrick's Day, Frazier was on duty.  Just before midnight, Frazier was engaged in a traffic stop when he heard a commotion outside of the Three Rivers Tap and Game Room, a brewery and bar, in Farmington, New Mexico.  He pulled his marked patrol vehicle up to the area just outside of Three Rivers and yelled in the direction of two young men that he saw walking away from the bar -- the victim D. Tanner and his brother Myron Tanner.  Frazier exited his patrol car, and yelled at the Tanners to come to the car.

After some discussion with the Tanners in the area where they had stopped walking, Frazier instructed M. Tanner to walk over to the opposite side of Frazier's patrol car.  D. Tanner responded to Frazier by stating that he was unable to see, as he had been sprayed with pepper spray while inside Three Rivers.  Frazier responded that he would then have to lead D. Tanner to the car, placed his hands on D. Tanner, and began to guide him to the location on the opposite side of his car, where he wanted D. Tanner to stand.

As Frazier led D. Tanner around the front of his patrol car, Frazier pushed D. Tanner on his back onto the hood of the patrol car.  Frazier took out his department-issued Maglite flashlight and pressed it into D. Tanner's throat.  D. Tanner reached up with his hands, Frazier

removed the flashlight from D. Tanner's throat, and yelled at D. Tanner not to resist, pressing the butt-end of the flashlight into D. Tanner.

As D. Tanner struggled under the flashlight, Frazier took the flashlight off of D. Tanner, and swung the flashlight at D. Tanner two times while at close range with D. Tanner still on the hood of the car, striking him in his head or neck area.  Frazier then pushed D. Tanner to the ground, striking D. Tanner three more times with his flashlight while D. Tanner laid on the ground, yelling at D. Tanner to roll over onto his stomach.

## **PROCEDURAL BACKGROUND**

Frazier, pursuant to the Plea Agreement, filed October 24, 2012 (Doc. 38), pled guilty to the Indictment, filed Dec. 16, 2008 (Doc. 2), charging him Deprivation of Rights Under Color of Law, a violation of 18 U.S.C. § 242.  Frazier admitted:

> By repeatedly striking D. T[anner] with the flashlight . . . , I willfully deprived him of his right under the United States Constitution to be free from the use of unreasonable force by a police officer.  The flashlight I used is a dangerous weapon, and the beating resulted in bodily injury to D. T[anner].

Plea Agreement ¶ 8, at 4.  The parties stipulated, pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, "that a specific sentence of between three (3) years and five (5) years of probation is appropriate. In addition, the Court shall order restitution as it determines is appropriate . . . ."  Plea Agreement ¶ 10(a), at 5.  In exchange, Frazier agreed "not [to] seek a downward departure, variance, or deviation of any kind from the agreed upon sentence."  Plea Agreement ¶ 10(a), at 5.

The USPO disclosed its PSR for Frazier on December 31, 2012.  See PSR at 1.  In the PSR, the USPO begins with Frazier's base offense level, pursuant to U.S.S.G. § 2H1.1(a)(1), using the offense level from aggravated battery in U.S.S.G. § 2A2.2(b)(2)(B) as the underlying

offense to provide the offense level, at 18.  PSR ¶¶ 40-41, at 11.  The USPO applies a 3-level increase pursuant to U.S.S.G. § 2A2.2(b)(3)(A), because the victim sustained bodily injury, to come to a base offense level of 21.  See PSR ¶ 42, at 11.  The PSR includes a 6-level increase pursuant to U.S.S.G. § 2H1.1(b)(1), because Frazier committed the offense under color of law, to reach a total offense level of 27.  See PSR ¶ 43, at 11.  With a 3-level reduction for acceptance of responsibility, the PSR calculates Frazier's total offense level to be 24.  See PSR ¶ 51, at 12. An offense level of 24 and a criminal history category of I provides a guidelines sentencing range of 51 to 63 months.  The PSR notes that Frazier may be eligible for a 3-level downward departure pursuant to U.S.S.G § 5H1.11 based on Frazier's military service, and recommends the downward departure if the Court does not accept the stipulation to the sentence provided in the Plea Agreement.  See PSR ¶ 95, at 19.

On January 7, 2013, Frazier filed his Objections to the PSR.  He "objects to paragraphs 40, 41, 42, 47, 51, 79, 80, 81, 85, and 98 insofar as they calculate the sentencing guidelines based on use of a cross-reference to the aggravated assault guideline, Guideline § 2A2.2, and thereby reach . . . a guideline higher than it should be."  Objections at 1.  Frazier contends that the USPO applying § 2A2.2, aggravated assault, as the underlying offense is inappropriate, as "there was no 'serious bodily injury' . . . and [] there was no intent to commit another felony."  Objections at 2. Frazier asserts that the facts and circumstances that the Court found in Tanner v. San Juan Cnty. Sheriff's Office, No. CIV 11-0328 JB/ACT, Memorandum Opinion and Order, filed March 21, 2012 (Doc. 47), show that there was no intent by Frazier to cause bodily injury to D. Tanner. See Objections at 6.  He notes that he never struck D. Tanner after he handcuffed him.  See Objections at 6.  Aside from his objection to application of the aggravated assault offense level,

Frazier's objections two through eight object to the PSR in so far as he wishes to correct minor factual or typographical errors in paragraphs 13, 36, 62, 65, 69, and 95.  See Objections at 7-8.

At the sentencing hearing, the Court asked Frazier whether the Addendum to the PSR, disclosed on January 9, 2013, addressed and fixed the paragraphs to which he objected based on the minor factual and typographical errors.  See Transcript of Hearing at 2:14-19 (Court, Indritz)(taken Jan. 18, 2013)("Tr.").[1]  Frazier stated that the USPO had adequately addressed his objections and made the corrections for which he had asked.  See Tr. at 2:20 (Indritz).  The Court then overruled Frazier's objections two through eight as moot.  See Tr. at 2:21-22 (Court). Frazier then argued in favor of his objection to the USPO's application of U.S.S.G. § 2A2.2, asserting that, in light of him arriving upon a group of fifteen individuals outside of a bar at midnight on Saint Patrick's Day, he acted as prudently as he could under the circumstances.  See Tr. at 3:11-4:8 (Indritz).  He contended that D. Tanner caught him by surprise when Frazier was leading him in front of the patrol car, Frazier thought that D. Tanner tried to grab for his Maglite flashlight, and Frazier hit D. Tanner out of fear for his own safety.  See Tr. at 4:22-5:23 (Indritz). Frazier asserted that he had no intent to injure D. Tanner; he was trying merely to prevent D. Tanner from assaulting him.  See Tr. at 5:24-6:18 (Indritz).  Beyond not having intent to cause bodily injury to D. Tanner, Frazier asserted, he did not in fact cause bodily injury to D. Tanner, as the USPO noted throughout the factual background findings in the PSR.  See Tr. at 6:19-25 (Indritz).

In response to the Court's inquiry whether the United States agreed with the USPO's application of § 2A2.2 as the underlying offense in the case, the United States stated that it

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers

"think[s] probation got it right.  [USPO's finding] square[s] with the way that [the United States] had analyzed this from the beginning."  Tr. at 8:21-9:2 (Court, Baker).  The United States stated:

> Bodily injury is not a high hurdle to clear, and Mr. Frazier has pled guilty to willfully depriving the victim of his constitutional rights by beating him with the mag[] light, and given those  circumstances I don't think you can parse out a way where there isn't the sufficient intent to clear the hurdle of an intent to cause bodily injury -- bodily harm.  When you look at the types of definitions bruising enough is alone, and but for the fact that the injuries here weren't more severe[,] they very likely could have given the conduct that's on the video that the Court's seen we'd probably be in a different circumstance.

Tr. at 9:6-16 (Baker).  In response to the Court's inquiry whether the United States took into consideration U.S.S.G. § 2A2.2 being the offense guideline applicable to any underlying offense for purposes of §2H1.1(a)(1) when it made the rule 11(c)(1)(C) stipulation for three to five years probation, the United States said that it had taken § 2A2.2 into consideration in making the stipulation.  See Tr. at 9:24-10:4 (Court, Baker).  The Court stated that, under case law from the United States Court of Appeals for the Tenth Circuit, the circumstances of Frazier striking D. Tanner at close range with his flashlight was sufficient to find that he had the intent to cause bodily injury with a dangerous weapon and thus overruled Frazier's objection.  See Tr. at 13:21-14:3 (Court).

The Court inquired whether the United States agreed with the USPO's recommendation of a 3-level downward departure for Frazier's military record.  See Tr. at 14:4-6 (Court).  The United States asserted that it believes that the Court should "credit" Frazier for his military service, but did not specifically recommend that he get credit through a downward departure rather than through a variance.  Tr. at 14:7-22 (Baker).  In response to whether Frazier thought he was entitled to a 3-level downward departure pursuant to § 5H1.11 for military service or whether his service weighed more towards varying downward, Frazier responded that it weighs

-6-

in favor of both.  <u>See</u> Tr. at 14:23-15:1 (Court, Indritz).  The Court noted that it would return to the issue whether to vary, but granted Frazier a 3-level departure downward under § 5H1.11 for his military service.  <u>See</u> Tr. at 16:7-11 (Court).  On motion from the United States, the Court also granted Frazier a  third level downward adjustment for his acceptance of responsibility under § 3E1.1.  <u>See</u> Tr. at 16:12-23 (Court, Baker, Indritz).

Frazier asserted that the downward variance to three years to five years probation is appropriate based on his background, his record as a police officer, and his public service.  He noted that he served in the United States Air Force twice -- once as an enlisted service member, then as an officer -- where he had a "stellar record."  Tr. at 17:9-18 (Indritz).  He stated that afterward, working as a probation officer supervisor and then a policeman, he also had a stellar record.  <u>See</u> Tr. at 17:18-20 (Indritz).  He stated that the Court should take into its consideration in varying downward that he only once has been reprimanded or criticized in any way as a police officer, when, shortly before the underlying incident, he was "criticized for not being forceful enough."  Tr. at 17:20-22 (Indritz).  He stated that he devoted his life to public service and that he is very sorry for what he did, because, not only did he deprive D. Tanner of his civil rights, but his life is now completely different after the incident.  <u>See</u> Tr. at 17:22-24 (Indritz).  He lost his job, and has been subject to public criticism and disdain over this matter. <u>See</u> Tr. at 17:25-18:3 (Indritz).  In response to the Court's inquiry what Frazier thought about the Court imposing home detention as part of his sentence, Frazier asserted that he is in no way a danger to the public, as he was only in this situation because he was a deputy sheriff and will no longer have that opportunity.  <u>See</u> Tr. at 19:7-9 (Court, Indritz).  In response to the Court's inquiry whether the United States thought this sentence creates an unwarranted disparity among similarly situated

-7-

defendants convicted of deprivation of civil rights, the United States asserted that, because this case is unique, it does not.  See Tr. at 21:1-4 (Court, Baker).  The United States asserted that, although the United States Department of Justice prosecutes defendants all over the country for civil rights violations, the defendants are usually "bad apples," with a long "rap sheet" of violations.  Tr. at 21:5-16 (Baker).  The United States asserted that it is certainly infrequent, and perhaps even the first time, that it prosecutes an officer with circumstances or a record similar to Frazier's.  See Tr. at 21:16-22:3 (Baker).

> The Court asked the United States how,
>
> given the high level of publicity that this case has had both in the Farmington area, where we have had a number of issues involving the police in that area, and then the high level of publicity here in the Albuquerque area, which in the end becomes publicity almost statewide, [] the sentence of probation serves the factor of general deterrence, and . . . . promot[es] respect for the law and provid[es] a just sentence.

Tr. at 24:20-25:3 (Court).  The United States responded that the case has already served the factor of general deterrence with the publicity and public support for justice which the United States achieved by securing a conviction of Frazier by his guilty plea for the charge of criminal deprivation of civil rights.  See Tr. at 25:10-15 (Baker).  The United States asserted that, given Frazier's circumstances and background, it was not a sure conviction had it gone to the jury.  See Tr. at 25:17-22 (Baker).  The United States stated that Frazier's conviction of criminal deprivation of civil rights by his guilty plea promotes respect for the law and is a general deterrence, because the general public sees that the United States both will not stand for officers violating citizens' civil rights and will enforce the law against police officers that might think they are above the law.  See Tr. at 26:3-27:4 (Baker).  In response to the Court's inquiry what the United States thought about imposing home detention as part of Frazier's sentence, the United

States responded that it believes the Court should fashion the sentence it sees as appropriate, but urges the Court to sentence Frazier to the agreed upon three to five years probation.  See Tr. at 30:12-30 (Baker).  The Court then imposed the sentence, sentencing Frazier to three years of probation, noting that the stipulation in the Plea Agreement of three to five years "departs for justifiable reasons."  Tr. at 32:2-36:2 (Court).

<u>ANALYSIS</u>

The United States and Frazier stipulate, pursuant to rule 11(c)(1)(C), that he should be sentenced to three to five years probation.  Pursuant to § 2H1.1(a)(1), the PSR applies U.S.S.G. § 2A2.2(b)(2)(b)'s base offense level of 18 for aggravated assault using a dangerous weapon. Because the conduct for which Frazier was convicted was depriving D. Tanner of his civil rights by hitting D. Tanner at close range with his county-issued flashlight -- excessive force prohibited under the United States Constitution -- the Court concludes that Frazier had the requisite intent to cause bodily injury.  The Court, therefore will overrule his Objection.  The nature of the incident, and Frazier's background and history, both personal and professional, justify, however, the Court's varying downward to sentence Frazier to a sentence of three years probation.

I.      **THE COURT WILL OVERRULE FRAZIER'S OBJECTION TO THE PSR, BECAUSE HE HAD INTENT TO CAUSE BODILY INJURY TO D. TANNER <u>WHEN HE DEPRIVED HIM OF HIS CIVIL RIGHTS.</u>**

"A court sentencing a defendant guilty of violating 18 U.S.C. § 242 starts with § 2H1.1 of the sentencing guidelines."  <u>United States v. Cozzi</u>, 613 F.3d 725, 733 (7th Cir. 2010).  To calculate the correct base offense level, § 2H1.1 provides:

(a) Base Offense Level (Apply the Greatest):

(1) the offense level from the offense guideline applicable to any underlying offense;

**(2)** 12, if the offense involved two or more participants;

**(3)** 10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage; or

**(4)** 6, otherwise.

**(b)** Specific Offense Characteristics

**(1)** If (A) the defendant was a public official at the time of the offense; or (B) the offense was committed under color of law, increase by 6 levels.

U.S.S.G. § 2H1.1.  Application Note 1 to § 2H1.1 defines the "[o]ffense guideline applicable to any underlying offense" as "the offense guideline applicable to any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law (other than an offense that is itself covered under Chapter Two, Part H, Subpart 1)."  U.S.S.G. § 2H1.1, cmt. n.1.  Section 2A2.2 of the United States Sentencing Guidelines applies to "aggravated assault," which is defined as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony."  U.S.S.G. § 2A2.2, cmt. n.1.  Application Note 1 to § 2A2.2 provides further: "'Dangerous weapon' . . . includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury."  U.S.S.G. § 2A2.2, cmt. n.1.

The intent to cause bodily injury has been construed by courts to be a low barrier, equating danger of harm with intent to cause bodily injury.  The United States Court of Appeals for the Tenth Circuit, in United States v. Hatch, No. 11-1392, 2012 WL 3009817 (10th Cir. July 24, 2012), held that kicking the victim in the head, because of the danger of harm associated with an injury to the head, demonstrated intent to cause bodily harm necessary to find that U.S.S.G. § 2A2.2 applied:

> And the fact that she is directing her kicks at his head demonstrates her intent. And it's not only an intent to commit bodily injury; this is an intent the Court believes to commit some type of serious bodily injury because, once again, Ms. Hatch is directing virtually all of her kicks and all of her punches to the victim's head, which is, of course, a part of the body that could most likely cause him some type of serious bodily injury.

2012 WL 3009817, at *3.  Similarly, in United States v. Bassil, 932 F.2d 342, 345 (4th Cir. 1991), where the defendant threw a chair in the direction of corrections officers, the United States Court of Appeals for the Fourth Circuit held that the defendant acted with the requisite intent, because "the defendant's intent in throwing the chair was to cause harm to the officers rather than merely frighten them."  932 F.2d at 345.

In United States v. Cozzi, a case similar to the case against Frazier, the United States Court of Appeals for the Seventh Circuit held that, in a civil rights action where a police officer was convicted of the use of excessive force for bludgeoning multiple times a citizen that he later arrested, the district court's calculation of the base offense level under U.S.S.G. § 2H1.1 using § 2A2.2 for aggravated assault was proper.   See 613 F.3d at 734. The defendant argued that, because he was convicted only of 18 U.S.C. § 242, it was improper to apply the aggravated battery guidelines offense level, greatly increasing the offense level under § 2H1.1.  The Seventh Circuit disagreed however, stating:

> The fact that there is only one count in his indictment does not eliminate Cozzi's conduct -- he could only violate Miles's civil rights by doing something. It is that something that constitutes the underlying offense for purposes of § 2H1.1, regardless of how many substantive counts with which Cozzi was charged.

United States v. Cozzi, 613 F.3d at 734.  The Seventh Circuit noted that the sentencing guidelines commission, in allowing § 2H1.1. to cross-reference an underlying offense with a greater offense level, intended to assure that similarly situated defendants receive similar

punishments.  See 613 F.3d at 733 ("The sentencing guidelines recognize that in a situation, as here, where the defendant's conduct is more reprehensible than a civil rights violation that used a minor amount of force, the defendant's sentence should be on par with other defendants in federal court who committed similar conduct under federal jurisdiction.")(citing United States v. Byrne, 435 F.3d 16, 27 (1st Cir. 2006)).

Here, as in United States v. Cozzi, Frazier was convicted of depriving a person of their civil rights under color of law under 18 U.S.C. § 242.  Also as in United States v. Cozzi, the underlying offense for which Frazier was convicted -- use of excessive force -- involved striking a criminal suspect with a blunt object, which, under the sentencing guidelines fits the definition of aggravated assault.  Whereas the Tenth Circuit found that kicking a victim in the head was sufficient to find intent to cause bodily harm, and thus aggravated assault under U.S.S.G. § 2A2.2, similarly here, Frazier admitted in his plea agreement to striking D. Tanner in the head and neck area at least twice.  Moreover, where the Fourth Circuit found that throwing a chair in the direction of the defendant was sufficient to conclude that the defendant acted with the requisite intent to cause bodily harm, striking D. Tanner with a county-issued flashlight is sufficient to find that Frazier used a dangerous weapon in assaulting D. Tanner and intended to cause him bodily harm.  The Court, therefore, concludes that the USPO was correct in finding that the underlying offense applicable here pursuant to § 2H1.1(a)(1) is found in § 2A2.2, for Aggravated Assault, and that, because Frazier used his flashlight in commission of the assault. Accordingly, the Court overrules Frazier's fact objection.

II.     **GIVEN THE CIRCUMSTANCES SURROUNDING FRAZIER'S USE OF EXCESSIVE FORCE ON D. TANNER, AND THE CIRCUMSTANCES OF FRAZIER'S PERSONAL AND PROFESSIONAL BACKGROUND, THE COURT WILL VARY DOWNWARD TO A SENTENCE OF THREE YEARS PROBATION AS THE COURT CONCLUDES THAT THE PARTIES' STIPULATION IN THE PLEA AGREEMENT IS JUSTIFIED.**

After the Court overruled Frazier's objection to the USPO's calculation of his base offense level, there are no other objections to the PSR, and the Court adopts the PSR's factual findings as its own.  The Court thus begins with Frazier's base offense level, which, pursuant to U.S.S.G. § 2H1.1, using the offense level from aggravated battery in U.S.S.G. § 2A2.2(b)(2)(B) as the underlying offense to provide the offense level, provides a total offense level of 27.  The Court grants a 3-level reduction for Frazier's acceptance of responsibility, and the PSR calculates Frazier's total offense level to be 24.  See PSR ¶ 51, at 12.  Additionally, the Court will depart downward 3 levels pursuant to U.S.S.G. § 5H1.11 based on Frazier's military services, to come to a total offense level of 21.  A total offense level of 21 and a criminal history category of I provides a guidelines sentencing range of 37 to 46 months.

The Court accepts the parties' stipulation pursuant to rule 11(c)(1)(C) that the Court sentence Frazier to a term of three to five years probation.  The Court believes that a sentence of three years probation, and imposition of a fine of $10,300.11 -- the cost of three-years probation[2] -- adequately reflects the seriousness of the crime that Frazier committed, and will promote respect for the law, provide just punishment, and afford adequate deterrence. While the sentence varies substantially from the suggested range under the Sentencing Guidelines, it is a more

_____

[2] The PSR provides that, "[t]he most recent advisory from the Administrative Office of the United States Courts, dated April 10, 2012, provides" the basis of the PSR's calculations of the cost of probation.  PSR ¶ 90, at 18-19.  The PSR provides that "Supervision by Probation Officer" costs $9.41 daily, $286.11 monthly, or $3,433.37 annually.  PSR ¶ 90, at 19. Multiplying the annual cost of probation by three equals $10,300.11.  The USPO has informed the Court that the costs of probation and supervised release are the same.

reasonable sentence and more faithfully promotes the sentencing goals Congress laid down in 18 U.S.C. § 3553(a).

The Court has carefully considered the parties' arguments in this case and Frazier's circumstances.  While greatly concerned that its sentence be seen as a just one and that it not undermine the general deterrent factor in a federal sentence. While the Court considered imposing home detention as a condition of Frazier's probation, it ultimately decided that such a move would be a fig leaf on the sentence of no incarceration.  The Court must bite the bullet and agree with the United States that Frazier is not a threat to the general public and that home detention is unnecessary.  The Court also made the same decision to go with the early end of the United States' and Frazier's stipulation to between three and five years probation; the is no sound reason to get to the high end rather than the low end of the proposed range.  The Court is confident Frazier will do well on probation, regardless how long it lasts.  The Court has identified several factors that counsel in favor of varying downward. A factor that weighs significantly in favor of varying downward is the parties' stipulation and Frazier's circumstances. The parties stipulated to a sentence of three to five years probation, and, the stipulation here is justifiable.  That the United States -- with a Department of Justice attorney that litigates these cases all over the country -- believes such a sentence is appropriate, while not in itself controlling, counsels persuasively in favor of a variance. More importantly, however, the Court concludes that Frazier's personal history, and the circumstances surrounding the criminal case against him, counsel in favor of varying downward to a sentence commensurate with his Plea Agreement.  Notably, the conduct underlying Frazier's criminal conviction was his use of excessive force, when only months before the incident for which he stands convicted, he was

-14-

formally reprimanded as a sheriff's deputy for not using enough force.  Beyond the temporal proximity of this reprimand to the event at issue in this case is the lack of any reprimands, or even poor performance comments or ratings, in his record as a law enforcement officer.   In addition to serving as a law enforcement officer, Frazier served as probation officer supervisor, and served in the Air Force twice, first as an enlisted airman and then as an officer.  It is also undisputed that his record of service in these professions was beyond repute.   Regardless whether Frazier's incarcerated, it is likely that his previously unblemished service history will now be read in a substantially different context.  Another factor that weighs in favor of varying downwards is the effect that Frazier's guilty plea will have in the public eye.  While Frazier agreed that the United States could prove him guilty at trial, Frazier raised issues whether there was sufficient evidence to prove his use of force was excessive and not reasonable under the circumstances.  The United States conceded at the hearing that it would have had a difficult time, given Frazier's professional and personal circumstances, to prove to a jury beyond a reasonable doubt that he intended to use excessive force against D. Tanner in violation of the Constitution. Finally, Frazier notes the difficulties that his being a convicted felon will have on him personally.  While being a convicted felon is a stain on every defendant's record, Frazier has been an active participant not only in his community as a law enforcement officer, a position he can have no longer, but he has also been an active participant in our democracy by exercising his right to vote throughout his lifetime.  This right is one that, as a convicted felon, he can exercise no longer.

A sentence within the guidelines range would be excessive and would contravene Congress' command that courts impose sentences that are sufficient but not greater than is

necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court recognizes the seriousness of the offense Frazier committed, but believes that the sentence of three years probation it imposes is better than no sentence at all had the United States not been able to prove its case to the jury beyond a reasonable doubt.  That the United States has convicted Frazier, a law enforcement officer, of violating a citizen's constitutional rights by using excessive force in executing the citizen's arrest provides general deterrence to other law enforcement officers that may contemplate a similar crime, and promotes respect for the law among the general public.  Frazier's age -- 57 -- is a factor.  Specific deterrence is not a major factor, because he is now retired and unlikely to ever serve in law enforcement again.  As Frazier is no longer a law enforcement officer, having been fired for the incident underlying this case, the Court is not particularly concerned with the sentence providing specific deterrence. Nevertheless, as Frazier is now a felon and subject to the limitations imposed on felons' rights, this sentence should provide adequate deterrence to him.  The nature of Frazier's role as a law enforcement officer substantially created the opportunity for the crime, and the nature of his personal and professional history indicate that he is not otherwise a substantial danger to the public.  This sentence thus adequately protects the public.  The United States represents that this variance avoids unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, as this situation is unique among the cases it prosecutes for civil rights violations.  That representation carries substantial weight with the Court.  Frazier is not a bad apple, but made a serious mistake in this situation.  The sentence that the Court imposes varies considerably from the guideline range, but in these circumstances, the

-16-

sentence imposed more effectively promotes the goals outlined in 18 U.S.C. § 3553(a).   The Court believes that this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a).  -Moreover, a longer sentence would be unnecessarily punitive and would not serve any useful purpose.   While the Court's task as a trial court is not to come up with a reasonable sentence, but to balance the 18 U.S.C. § 3553(a) factors correctly, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir.2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).") (citation omitted), the Court believes that this sentence is a more reasonable sentence than the guideline sentence. And perhaps most important in this calculation, the Court believes that this sentence is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act of 1984.

**IT IS ORDERED** that the objections raised in Defendant's Objections to Presentence Report, filed January 7, 2013 (Doc. 41), are overruled.   Defendant Roger Dale Frazier is sentenced to three years probation, and the Court imposes a fine of $10,300.11.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Sheldon Beer
   United States Department of Justice Trial Attorney
Criminal Section
Civil Rights Division
United States Department of Justice
Washington, District of Columbia

-- and --

Kenneth J.  Gonzales
   United States Attorney
Mark T. Baker
   Assistant United States Attorney
United States Attorney's Officer
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Tova Indritz
Albuquerque, New Mexico

   *Attorney for the Defendant*